**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| KELLY MCSEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cv-01174-JMB |
| | ) | |
| DAN BULLOCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on self-represented plaintiff Kelly McSean's application to proceed in the district court without prepaying fees or costs. Having reviewed the application and the financial information submitted in support, the Court finds plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $30.00. Furthermore, after initial review, the Court will order plaintiff to file an amended complaint in accordance with the instructions set out below.

### Initial Partial Filing Fee

A prisoner bringing a civil action is required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency

having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted her Resident Account Summary from the St. Francois County Jail for the five months preceding the filing of her complaint. Having reviewed the information contained in account summary, the Court will require plaintiff to pay an initial partial filing fee of $30.00, which is twenty percent of her average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone*

*v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff identifies as a transgender woman and is currently incarcerated in the St. Francois County Jail. She has submitted a 104-page handwritten complaint alleging defendants violated her First, Fifth, Eighth, and Fourteenth Amendment rights by refusing to allow her to buy and wear women's undergarments in jail. She names as defendants the following ten individuals working at the St. Francois County Jail: Dan Bullock (Sheriff); Greg Armstrong (Chief of Custody and Captain); Jamie Crump (former Administrator); Randy Camden (Administrator); Hardy White (Lieutenant); Doylene Danieley (CFO and Canteen Officer); Remington Appel (Corporal); Katie Harris (medical professional); Jennifer Beard (mental health professional); and Christina Rayoum (Corporal). She also names as a defendant Advanced Correctional Healthcare, the company that provides medical care and mental health treatment to inmates. She names all defendants in both their individual and official capacities.

Plaintiff's complaint is difficult to review because the events described are not in chronological order. Also, plaintiff has buried much of the necessary factual information within the nearly 104 pages of legal conclusions. Plaintiff's factual allegations can be summarized as follows: since her arrival at the St. Francois County Jail on August 30, 2022, defendants have not

accepted her diagnosis of gender dysphoria and have not allowed her to wear women's undergarments.

She states that she wore women's undergarments upon her arrival at the jail. Although the complaint is silent as to what happened to these undergarments, presumably they were confiscated. Plaintiff was then issued male undergarments. Plaintiff seems not to have challenged this issue at the time. But on January 31, 2023, she ordered women's undergarments from the Keefe Commissary Network through the St. Francois County Jail's canteen. On February 2, 2023, defendant Doylene Danieley, who is in charge of the commissary, took away the female undergarments. It is unclear if plaintiff ever wore the undergarments or if she had simply ordered them and Danieley took them away when they arrived. Plaintiff also alleges that the St. Francois County Jail does not have any policies regarding transgender inmates.

Despite the length of the complaint, it seems the legal question can be summarized simply as whether transgender pretrial detainees have a constitutional right to wear undergarments that align with their gender identity.[1]

Although these factual and legal issues seem straight-forward, plaintiff's complaint is too lengthy and duplicative for initial review. She has organized her complaint by listing each

---

[1] To the extent plaintiff is bringing claims of sexual harassment and discrimination and Equal Protection violations, these issues have been addressed by the Court and found to be without merit. *See McSean v. Harris*, No. 4:23-cv-1706-JMB (E.D. Mo. Jan. 18, 2024); *McSean v. Lemons*, No. 4:23-cv-1086-RLW (E.D. Mo. Dec. 7, 2023).

In addition to these two cases, plaintiff has filed four other cases in this Court recently. A summary of these cases and their dispositions can be found at *McSean v. Hacker*, No. 4:23-cv-878-JSD (E.D. Mo. filed Feb. 28, 2024). Plaintiff's criminal background and how she has landed at the St. Francois County Jail after having been a civil detainee at the Southeast Missouri Mental Health Center is also summarized in that opinion. *Id.*

-4-

defendant and then alleging similar constitutional violations against each defendant. For the most part, the complaint follows the following template with slight variations depending on the defendant:

Defendant [Name] has and continues to deliberately with the use of his authority and position violate Ms. McSean's (1st) (First) Amendment right to freedom of speech through expression. When defendant [Name] failed to protect Ms. McSean by failing to allow Ms. McSean the rights affor[ded] to herein amendment (1) one: when it clearly states that it insures that "Congress shall make no law abridging the freedom of speech," expression is a form of speech. Defendant [Name] violated this right affor[ded] to Ms. McSean when defendant [Name] failed to do the same as Congress. By not making laws of his own due to the St. Francois County Detention Center not having policy to guide defendant [Name]. Defendant [Name] at any time could have made the decision to not sexually harass, sexually discriminate, humiliate, degrade, embarrass, along with the stereotyping and defamation of character used, by discriminating on the basis of sex. Defendant [Name] should have known the importance of policy and confirmed his thoughts and beliefs before, implementing them on Ms. McSean. That has caused Ms. McSean the consequences she has been forced to cope and deal with. Defendant [Name] could have supported Ms. McSean and allowed her the items Ms. McSean purchased on January 31 of 2023, by the canteen and that he denied Ms. McSean on February 2nd of 2023. (Exhibits will show proof of purchase and denial of items).

Defendant [Name] has and continues to deliberately with the use of his authority and position violate Ms. McSean's (5th) (Fifth) Amendment right to liberty without due process when defendant [Name] failed to protect Ms. McSean by depriving Ms. McSean the liberty to pursue her advancement and happiness thr[ough] her abilities to cope and deal with her gender identity/gender dysphoria in her own way. With defendant [Name] use of authority and position to restrain Ms. McSean.

Defendant [Name] has and continues to deliberately with the use of his authority and position violate Ms. McSean's (5th) (Fifth) Amendment Right to property without due process. When defendant [Name] failed to protect Ms. McSean by depriving Ms. McSean the property she legally purchased on January 31st of 2023. (Exhibit of account statement will show the purchase). From the Keefe Commissary network, located at P.O. Box 17490 St. Louis, MO 63178-7490. Through the St. Francois County detention center canteen on February 1st of 2023 purchase was finalized (Exhibit shows funds taken from Ms. McSean's account) located at 1550 Doubet Road Farmington, MO 63640. The (canteen-

-5-

undergarments) purchased on January 31st of 2023 were not any type of contraband or security concern or risk to the facility. Just as the male undergarments for men and the female undergarments for females are not. No other commissary purchases thr[ough] Keefe to include undergarments have or are considered to be contraband. Therefore, one can only establish that defendant [Name] used his authority and position in seizing the property due to his personal beliefs in his official capacity.

Defendant [Name] has and continues to deliberately with the use of his authority and position to violate Ms. McSean's (14th) (Fourteenth) Amendment right to be free from punishment without due process. When defendant [Name] failed to protect Ms. McSean by knowing Ms. McSean was booked in on August 30th of 2022, as a transgender female. Defendant Name did not rely on documentation, nor did defendant [Name] rely on policies, statues, or any other means of reference material before his deliberate actions to discriminate on the basis of sexual stereotyping. That at all times deprived Ms. McSean of her constitutional liberties according to her (1st) (First) Amendment right. These actions on behalf of defendant [Name] to discriminate on the basis of sex is at all times sexual harassment, sexual discrimination, humiliation, degrading, dehumanizing, embarrassing. These actions as well as stereotyping and defamation of character are cruel and unusual punishment. When Defendant [Name]'s deliberate choices to refuse to allow Ms. McSean the clothing items (sports bra and female underwear) that defendants allowed her to purchase defendant [Name] spoke in a tone loud enough for everyone to hear that resided in her pod/wing.

Defendant [Name] has and continues to deliberately with the use of his authority and position to violate Ms. McSean's (14th) (Fourteenth) Amendment right to due process and equal protection under the law. When defendant [Name] failed to protect Ms. McSean rights and not insuring their policies were in place to guide staff/sheriff deputies to protect the rights of Ms. McSean afforded to her by the Missouri Constitution, and also by the United States Constitution, that at all times are to protect Ms. McSean. Defendant [Name] knows the importance of properly training the sheriff's deputies to enforce and abide by laws, policies, and state regulations to perform his job duties, and the duties of those under his authority. Defendant [Name] clearly never checked to see and view the policies of transgender females (Exhibit request form supplied by Remington Appel dated 3-23-23 that states, the St. Francois County Detention Center has "no" transgender policies). Should have been a "red flag" to the serious violation that defendant [Name] was inflicting on Ms. McSean. This action clearly shows defendant [Name] deliberate intent to cause the emotional distress, mental anguish, and psychological trauma of his actions. These actions at all times were deliberate and cruel and unusual punishment. These choices on behalf of defendant [Name] were a violation of Ms. McSean's (14th) (Fourteenth) Amendment right to due process and equal protection under the law.

Compl. at 35-42.[2] This basic template is repeated for nine of the defendants.

With respect to the two medical defendants, Katie Harris and Jennifer Beard, plaintiff's allegations are much the same, but she adds that these defendants did not acknowledge her prior medical records from Southeast Missouri Mental Health Center (SMMHC) and the psychologists, doctors, and other mental health professionals who identify Ms. McSean as a transgender woman. Plaintiff alleges that she has been diagnosed as suffering from gender dysphoria, although she does not allege when she was diagnosed, where, and by whom.[3]

## Discussion

Prison officials may violate the prohibition of cruel and unusual punishment when they are deliberately indifferent to the serious medical needs of transgender inmates. Transgender inmates have successfully petitioned the Court to assert their constitutional rights to medical treatment from prison officials. *See Hicklin v. Precythe*, No. 4:16-cv-1357-NCC, 2018 WL 806764 (E.D. Mo. Feb. 9, 2018) (granting preliminary injunction to provide transgender inmate hormone therapy and access to gender-affirming canteen items). It is possible that medical treatment could include allowing a transgender inmate to wear undergarments consistent with their gender identity. *Id.*; *cf. Long v. Nix*, 86 F.3d 761, 764 (8th Cir. 1996) (noting experts disagree about treatment for gender dysphoria but one expert recommended "inmate be given limited opportunities to wear women's clothes to relieve his anxiety"). Therefore, if plaintiff would simply allege the who, what, when,

---

[2] The Court has corrected spelling errors in the quotation and has altered it from plaintiff's original all-caps version.

[3] In her case pending against employees of SMMHC alleging these same constitutional violations, plaintiff has not stated that she received a diagnosis of gender dysphoria at SMMHC. *See McSean v. Hacker*, No. 4:23cv-878-JSD (E.D. Mo. filed Jul. 12, 2023).

where, and why of her claim without including pages of formulaic legal conclusions, her claim might survive initial review under § 1915(e)(2)(B).

But plaintiff's complaint violates the procedural rule that it contain a short and plain statement of her claim. *See* Fed. R. Civ. P. 8(a)(2).  In addition, many of plaintiff's legal theories are unlikely to survive initial review. In particular, the Court has found no support for plaintiff's assertion that transgender inmates have a First Amendment right to wear women's clothing in jail. *See Murray v. United States Bureau of Prisons*, 106 F.3d 401, *2 (6th Cir. 1997) (per curiam) ("An inmate is not entitled to the clothing of his choice, and prison officials do not violate the Constitution simply because the clothing may not be aesthetically pleasing or may be ill fitting."); *Renee v. Neal*, 483 F. Supp. 3d 606, 613-14 (N.D. Ind. 2020) (granting qualified immunity to defendants because no clearly established First Amendment right to wear makeup and purchase female hygiene items); *Jones v. Warden of Stateville Corr. Ctr.*, 918 F. Supp. 1142, 1146 (N.D. Ill. 1995) (finding frivolous a transgender inmate's First Amendment claim based on denial of access to female underwear).

Also, plaintiff's legal theories under the Fifth Amendment's "takings clause" would likely be dismissed on initial review. The "takings clause" of the Fifth Amendment provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "Seizure of convicted prisoners and their personal property are not the kinds of takings that are prohibited by the Fifth Amendment." *See Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011) (citing *Paalan v. United States*, 120 F. App'x 817, 822-23 (Fed. Cir. 2005) ("[N]either the seizure of items of evidentiary value nor the retention of personal property that [plaintiff] was not allowed to retain during his incarceration constituted takings for which the government was

required to pay just compensation.")); *see also Olmos v. Stokes*, No. CV 10-2564-PHX-GMS (MEA), 2011 WL 1792953, *10 (D. Ariz. May 11, 2011) ("[A] prisoner cannot establish a taking under the Fifth Amendment absent a showing that his property was taken for public use.").

Additionally, the court reminds plaintiff that her claims of sexual harassment and discrimination and her Equal Protection violations have been addressed by this Court and found to be without merit. *See McSean v. Harris*, No. 4:23-cv-1706-JMB (E.D. Mo. Jan. 18, 2024) and *McSean v. Lemons,* No. 4:23-cv-1086-RLW (E.D. Mo. Dec. 7, 2023).

Of course plaintiff may still include these claims in her amended complaint, but it is unlikely they will survive initial review under 28 U.S.C. § 1915.

Plaintiff's complaint violates the procedural requirement that it contain a short and plain statement of her claim and is composed almost entirely of legal conclusions that the Court need not accept as true. Because plaintiff is a self-represented litigant, however, the Court will not dismiss the complaint at this time. Instead, plaintiff will be given the opportunity to amend her pleading according to the instructions set forth below. In preparing her amended complaint, plaintiff must follow these instructions. Failure to follow these instructions may result in the dismissal of her claims.

### Instructions for Amended Complaint

Plaintiff is cautioned that the filing of an amended complaint completely replaces the original complaint so it must include all claims plaintiff wishes to bring. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) ("It is well-established that an amended complaint supersedes an original complaint and renders the original complaint without legal effect"). For her amended complaint, plaintiff must use the Court-provided prisoner civil

-9-

rights complaint form, which will be provided to her.

The Court notes for plaintiff that the directions to Part II of the form complaint state, "[t]ype or neatly print, a short and plain statement of the **FACTS** that support your claim(s). . . . Do not make legal arguments, or cite court cases or statutes." Compl. at Part II (emphasis in original). Additionally, it instructs that "[f]or each defendant you have named in this complaint, you must state what he or she personally did to harm you." *Id.*

After receiving the amended complaint, the Court will review it pursuant to 28 U.S.C. § 1915. If plaintiff fails to file an amended complaint on a Court-provided form within **twenty-one (21) days** in accordance with Federal Rule 20 and the instructions set forth above, the Court may dismiss this action without prejudice and without further notice to plaintiff.

### Motion to Appoint Counsel

Finally, plaintiff has filed a motion to appoint counsel. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not

warranted at this time. Plaintiff has demonstrated, at this point, that she can adequately present her claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $30.00 within **thirty (30) days** of the date of this order. Plaintiff is instructed to make her remittance payable to "Clerk, United States District Court," and to include upon it: (1) her name; (2) her prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank Prisoner Civil Rights Complaint form.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint on the Court-provided form in accordance with the instructions stated above within **twenty-one (21) days** of the date of this Order. Plaintiff is advised that her amended complaint will take the place of her original filing and will be the only pleading this Court will review.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel is **DENIED**. [ECF No. 4]

-11-

**IT IS FURTHER ORDERED** that if plaintiff fails to comply with this Order, the Court

will dismiss this action without prejudice and without further notice.

Dated this 29th day of February, 2024.

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

-12-